# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMADOR CANACAS DIMAS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 2:26-cv-00330-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY RESPONDENT'S MOTION TO DISMISS, AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING<br><br>(ECF Nos. 1, 12) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted, Respondent's motion to dismiss be denied, and Petitioner be provided a bond hearing.

## I.

## BACKGROUND

Petitioner is a citizen of Honduras who first entered the United States on December 14, 1998 and was ordered removed by an immigration judge ("IJ") on January 19, 2000. (ECF No. 12-1 at 1, 3.[1]) On August 3, 2010, Petitioner was convicted of lewd acts with a child, in violation of California Penal Code ("CPC") section 288(c)(1). (ECF No. 12-1 at 1, 3; ECF No. 12-2 at 5.) On June 2, 2011, Petitioner was removed from the United States pursuant to the January 19,

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

2000 final order of removal. (ECF No. 12-1 at 3.) On November 14, 2024, Petitioner was arrested for lewd acts with a child, in violation of CPC § 288(c)(1), and failure to register as a sex offender, in violation of CPC § 290(b). (ECF No. 12-2 at 6–7.)

On February 17, 2025, the National Criminal Analysis and Targeting Center ("NCATC") referred Petitioner to immigration authorities. Immigration authorities arrested Petitioner on March 4, 2025. (ECF No. 12-1 at 2.) Petitioner was served a warrant for his arrest and issued a notice of intent to reinstate his prior order of removal. (ECF No. 12-3.) Petitioner claimed a fear of removal to Honduras. (ECF No. 12-1 at 3.) He was provided an interview with an asylum officer who determined that Petitioner did not establish a reasonable fear of removal to Honduras. That determination was referred to an IJ for review. (ECF No. 12-4.)

On March 21, 2025, an IJ issued a decision concurring with the asylum officer that Petitioner failed to establish a reasonable fear of removal to Honduras and returned the matter to the Department of Homeland Security for removal of Petitioner. (ECF No. 12-5.) On April 7, 2025, Petitioner filed a petition for review of the IJ decision with the Ninth Circuit Court of Appeals and a motion for a stay of his removal, which provided an automatic stay of his removal while the motion for stay was adjudicated. (ECF No. 12 at 2.) On October 24, 2025, the Ninth Circuit granted the motion for a stay along with granting appointment of pro bono counsel. (Id. at 3.)

On September 12, 2025, Petitioner had a bond hearing pursuant to Aleman Gonzalez v. Sessions, 325 F.R.D. 616, 629 (N.D. Cal. 2018). (ECF No. 12 at 2.) The IJ denied release, finding that the government the "met its burden of establishing by clear and convincing evidence that [Petitioner] poses a flight risk that cannot be ameliorated through the posting of a reasonable bond." (ECF No. 12-6 at 1.) Petitioner reserved appeal of the bond decision but did not file an appeal with the Board of Immigration Appeals by October 14, 2025. (Id. at 2.)

On February 6, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 8–18.) The Court "construe[d] the Petition as also raising a due process claim regarding the September 12, 2025 bond hearing and challenging the statutory authority for [Petitioner's] detention." (ECF No. 8 at 1.) On March 2,

2026, Respondent filed a motion to dismiss. (ECF No. 12.) On March 23, 2026, Respondent filed a notice of supplemental authority. (ECF No. 14.) On May 8, 2026, the Court granted the Federal Defender's amicus motion to appoint counsel. (ECF No. 16.) On May 26, 2026, Petitioner filed an opposition to the motion to dismiss. (ECF No. 20.) To date, no reply in support of the motion to dismiss has been filed, and the time for doing so has passed. On July 15, 2026, Respondents filed the digital audio recording of the bond hearing, which the Court has reviewed. (ECF No. 22.)

## II.

## DISCUSSION

### A. Statutory Basis of Petitioner's Detention

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Section 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id.

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" Id. (internal quotation marks omitted) (quoting 8 U.S.C. § 1231(a)(1)(A)).

> This "removal period" begins on the latest of either (1) the date a noncitizen's "order of removal becomes administratively final," (2) the date of a court's final order, if the noncitizen's removal order is

> judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement. *Id.* § 1231(a)(1)(B)(i)–(iii).

Avilez, 69 F.4th at 531. "During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Section "1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

Here, Respondent asserts that "Petitioner's detention is both mandatory and authorized under 8 U.S.C. § 1231(a)(6)." (ECF No. 12 at 5.) Petitioner contends that a "non-citizen who is seemingly detained under 8 U.S.C. § 1231(a) based on a final order of removal, where administrative review is complete, but removal is stayed by the court of appeals pending review of the case, is treated as if detained under 8 U.S.C. § 1226(a)," citing to Prieto-Romero, 534 F.3d at 1058 ("We hold that the Attorney General's statutory authority to detain [petitioner], whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a)."), and Hernandez-Castro v. Lyons, No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *9 (E.D. Cal. Dec. 31, 2025).

The Supreme Court has "held that § 1231(a) applies to individuals who are removed and who then reenter without authorization and apply for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." Arteaga-Martinez, 596 U.S. at 575–76 (citing Guzman Chavez, 594 U.S. 523). "[R]emoval orders and withholding-only proceedings address two distinct questions. As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." Guzman Chavez, 594 U.S. at 539. To the extent that Petitioner relies on 8

U.S.C. § 1231(a)(1)(B)(ii) to support his argument that the removal period has not commenced, the Court finds that such an argument is not persuasive. The statute states that "[i]f *the removal order* is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added). Thus, "the stay must relate to an appellate court's judicial review of the removal order itself, not a determination regarding credible fear or withholding of removal." Deagueros Mota v. Blanche, No. 3:26-cv-01254-RBM-MSB, 2026 WL 972850, at *3 (S.D. Cal. Apr. 10, 2026). Here, as the Ninth Circuit's judicial review concerns a determination regarding credible fear, 8 U.S.C. § 1231(a)(1)(B)(ii) is inapplicable. Additionally, the Supreme Court has rejected the argument that "to detain an alien under § 1231, DHS must eliminate all legal impediments to removal." Guzman Chavez, 594 U.S. at 545.

Based on the foregoing, the undersigned recommends finding that Petitioner is detained pursuant to 8 U.S.C. § 1231(a).

**B. September 12, 2025 Bond Hearing**

"[T]he determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" Martinez v. Clark, 124 F.4th 775, 779 (9th Cir. 2024). "When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion." Id. at 784. "Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Id. at 785 (alterations in original) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially

> dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024).

Here, the IJ denied bond, stating:

> Based upon the respondent's history of returning to the United States after being deported and the fact that a negative reasonable fear finding was made and concurred in by an immigration judge (suggesting that respondent has little likelihood of relief from removal), the court finds that DHS has met its burden of establishing by clear and convincing evidence that respondent poses a flight risk that cannot be ameliorated through the posting of a reasonable bond. The court finds that DHS has not met its burden of establishing by clear and convincing evidence that respondent is a danger to the community. It appears that respondent's underlying criminal conduct occurred over 20 years ago. There is insufficient evidence in the record that respondent has engaged in recent conduct that would make him a danger to the community.

(ECF No. 12-6 at 1.)

1. 8 U.S.C. § 1252(g)

Respondents argue that "8 U.S.C. § 1252(g) strips the Court of jurisdiction to review the bond hearing" because "asking this Court to review the IJ's determinations during the bond proceedings necessarily infringes on the Attorney General's power to adjudicate cases, including bond cases." (ECF No. 12 at 4.)

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "[T]he express instructions of the Supreme Court, our precedent, and common sense . . . require us to read the statute narrowly." Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018). "Though 8 U.S.C. § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' . . . the central issue is Petitioner's continued

detention. Thus, this Court has the authority to review" Petitioner's claims. Hernandez-Castro v. Lyons, No. 1:25-cv-01574 JLT SAB, 2025 WL 3771344, at *3 (E.D. Cal. Dec. 31, 2025). See Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001) (noting that "Congress has enacted several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available," including § 1252(g), but finding "none applies" and "conclud[ing] that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *3 (W.D. Wash. Dec. 19, 2025) ("Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g)."). Accordingly, the undersigned recommends finding that 8 U.S.C. § 1252(g) does not bar jurisdiction over Petitioner's claims.

2. Adequacy of Bond Hearing

Petitioner argues that the immigration judge erred by failing to grapple with the Matter of Guerra factors. (ECF No. 20 at 18.)

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.*

Martinez, 124 F.4th at 783. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "Any evidence in the record that is probative and specific can be considered." Id. at 40–41.

Courts have found that an "IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on . . . evidence that 'bear little if any relevance' to Petitioner's risk of flight, while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." Perez Velasquez v. Bondi, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (quoting Matter of Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976)). See Perez Velasquez, 2026 WL 1042479, at *6 ("IJ considered only Petitioner's reliance on public assistance, driving without a license, and failure to pay taxes as evidence supporting a finding of flight risk."); Lemus Crispin v. Bondi, No. 1:26-cv-191 (LMB/WEF), 2026 WL 768859, at *5, 6 (E.D. Va. Mar. 18, 2026) (finding IJ "relied upon three facts that do not pass constitutional muster": "unlawful status," "working in the United States without authorization," and "potential inconsistencies in Lemus's tax returns").

Here, the IJ properly considered Petitioner's history of immigration violations, which is one of the Guerra factors. The IJ also properly considered Petitioner's likelihood of relief from removal. See Matter of R-A-V-P-, 27 I. & N. Dec. 803, 805 (BIA 2020) ("The Immigration Judge may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond."). Although a "probabilistic evaluation of Petitioner's future likelihood of immigration relief is not sufficient to establish flight risk under the clear and convincing evidence analysis," here the IJ considered both Petitioner's history of immigration violations and the negative reasonable fear finding. Ji v. Warden, No. 1:26-CV-03442 DJC SCR, 2026 WL 1733618, at *7 (E.D. Cal. June 16, 2026), report and recommendation adopted, 2026 WL 1852290 (E.D. Cal. June 26, 2026). "Because the IJ . . . w[as] entitled to place some weight on the [two factors] in their analysis of flight risk, the Court generally lacks jurisdiction to review whether they placed too much." Kharis, 2018 WL 5809432, at *8 (citing Sales v. Johnson, 323 F. Supp. 3d 1131, 1139 (N.D. Cal. 2017)). Based on the foregoing, the undersigned recommends finding that Petitioner is not entitled to habeas relief on this ground.

Petitioner also argues that the IJ erred in failing to consider available alternatives to detention, such as electronic monitoring or the Intensive Supervision Appearance Program (ISAP). (ECF No. 20 at 19.) The Ninth Circuit has rejected this argument:

> Nowhere in *Singh* did we suggest that due process also mandates that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community. *Singh* offers the high-water mark of procedural protections required by due process, and we see no reason to extend those protections any further here.

Martinez, 124 F.4th at 786 (distinguishing Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017), which found "Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release," because Hernandez "rel[ied] on [an] *absence* of dangerousness or flight-risk determination in [its] procedural due process analysis"). Accordingly, the undersigned recommends finding that Petitioner is not entitled to habeas relief on this ground.

Petitioner also argues that the immigration court and the BIA are no longer willing or able to provide neutral adjudicators. (ECF No. 20 at 19.)

> To establish a due process violation, Petitioner must show (1) "the proceeding was so fundamentally unfair that [he] was prevented from reasonably presenting his case," and (2) "prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006) (internal quotation marks and citation omitted). Petitioner can meet this burden by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Rivera v. Mukasey*, 508 F.3d 1271, 1276 (9th Cir. 2007) (internal quotation marks and citation omitted), but "a mere showing that the IJ was unfriendly, confrontational, or acted in an adversarial manner is not enough," *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016).

Mata-Yanez v. Bondi, No. 23-1329, 2025 WL 3014219, at *1 (9th Cir. Oct. 28, 2025). Although "Petitioner argues that both the current Administration's policy and statistical evidence indicate immigration judges no longer serve as impartial adjudicators, Petitioner does not supply evidence of bias by this Immigration Judge in this particular proceeding." Nasr v. Warden of Golden Annex Det. Facility, No. 1:26-cv-01376-DJC-JDP, 2026 WL 1396636, at *2 (E.D. Cal. May 19, 2026). Accordingly, the undersigned recommends finding that Petitioner is not entitled to habeas relief on this ground.

\\\

**C. Prolonged Detention**

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). In Diouf v. Napolitano (Diouf II), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit applied "the canon of constitutional avoidance and

construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision" and held that "[s]uch aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community."[2] Diouf II, 634 F.3d at 1086.

In Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), the Ninth Circuit, applying the canon of constitutional avoidance, held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court found the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" fell "far short of a 'plausible statutory construction,'" and held that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 304, 296, 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit reexamined the applicable procedures for immigration detention under 8 U.S.C. § 1231(a)(6). Although "recogniz[ing] some tension

[2] Diouf II did not explain "what procedures would apply to the bond hearings that [the Ninth Circuit] read into § . . . 1231(a)(6)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022). The Ninth Circuit "took up that question in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)," and relying on "general principles of procedural due process," held that "the government must prove by clear and convincing evidence that continued detention is justified based on the alien's flight risk or danger to the community," Rodriguez Diaz, 53 F.4th at 1199 (internal quotation mark omitted) (quoting Singh, 638 F.3d at 1200).

between *Diouf II* and *Jennings*," the Ninth Circuit held that it "remain[ed] bound by *Diouf II*" and concluded that "that the district court did not err in relying on *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" and "also properly required the Government to bear a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed, holding that 8 U.S.C. § 1252(f)(1) deprived the district court of jurisdiction to entertain the requested class-wide injunctive relief. Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022). In Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), "a companion case decided that same day arising from the Third Circuit, . . . the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez* (which was itself based on *Diouf II*)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022). Arteaga-Martinez held that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence" and declined to reach the constitutional claims. 596 U.S. at 581, 583. "[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under" 8 U.S.C. § 1231. Rodriguez Diaz, 53 F.4th at 1201.

Petitioner contends "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 9, 10.)

Courts in the Ninth circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner]

to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black v. Decker, 103 F.4th 133, 147 (2d Cir. 2024)

("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 225 (3d Cir. 2018) (applying Mathews "[i]n order to identify 'the specific dictates of due process'" in the context of § 1231(a)(6) detentions), abrogated by Arteaga-Martinez, 596 U.S. 573. Some courts look to whether the petitioner is requesting an initial bond hearing or a second bond hearing in deciding whether to apply the Mathews test because "[w]hile the Mathews factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020 WL 263670, at *2 (W.D. Wash. Jan. 17, 2020) (quoting Banda, 385 F. Supp. 3d at 1118).

Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, and the fact that Petitioner is seeking a second bond hearing, the Court will apply the Mathews test. In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom

from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)).

However, the Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner received one bond hearing before an IJ where the government bore the burden of demonstrating that detention was warranted and acknowledges Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208. Based on the foregoing, the undersigned recommends finding that the first Mathews factor weighs slightly in favor of Petitioner.

2. Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On September 12, 2025, Petitioner had an individualized bond hearing before an IJ where the government had the burden of establishing by clear and convincing evidence that Petitioner posed a danger to the community or a flight risk if released. (ECF No. 12 at 2.) The IJ denied release, finding that the government the "met its burden of establishing by clear and convincing evidence that [Petitioner] poses a flight risk that cannot be ameliorated through the posting of a

reasonable bond." (ECF No. 12-6 at 1.) Petitioner had the right to appeal that decision to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez Diaz, 53 F.4th at 1210. Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small'" at the time of Petitioner's first bond hearing. Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)).

After the Supreme Court's decision in Arteaga-Martinez, however, Petitioner does not have a statutory right to a bond hearing before an IJ. Applicable DHS regulations "generally require a custody review at the end of the 90-day removal period, a second review by a panel at ICE headquarters after six months of detention, and subsequent annual reviews." Arteaga-Martinez, 596 U.S. at 583; 8 C.F.R. § 241.4. The noncitizen "may submit information in writing in support of his or her release" and "may be assisted by a person of his or her choice[.]" 8 C.F.R. § 241.4(h)(2). The regulations set forth criteria for release and factors to be weighed in considering detention or release. 8 C.F.R. §§ 241.4(e)–(f). Further, "[n]ot more than once every three months in the interim between annual reviews, the alien may submit a written request to the HQPDU [Headquarters Post-Order Detention Unit] for release consideration based on a proper showing of a material change in circumstances since the last annual review." 8 C.F.R. § 241.4(k)(2)(iii).

Although the Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon and its statutory interpretation of § 1231(a)(6), the Court finds Diouf II's discussion of the Mathews factors informative regarding the constitutional issues before this Court. With respect to the second factor, the Ninth Circuit found that "at the 180–day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention" because the "regulations do not afford adequate procedural safeguards [as] they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a

neutral arbiter such as an immigration judge.[3]" Diouf II, 634 F.3d at 1091 (footnote in original). The Ninth Circuit subsequently rejected the argument that a noncitizen bearing the burden of proof at a bond hearing rendered § 1226(a)'s procedures constitutionally deficient. Rodriguez Diaz, 53 F.4th at 1210–12. However, § 1226(a) and its implementing regulations provide for the right to seek an additional bond hearing before an immigration judge based on materially changed circumstances, 8 C.F.R. § 1003.19(e), whereas a noncitizen detained under § 1231(a) may submit a written request for release consideration to an agency employee based on materially changed circumstances and a hearing is not required, 8 C.F.R. §§ 241.4(k)(2)(iii), (h)(1). Thus, in the context of § 1231(a), "the risk of an erroneous deprivation of liberty in the absence of a *hearing* before a *neutral decisionmaker* is substantial" as the time in detention lengthens. Diouf II, 634 F.3d at 1092 (emphasis added).

Based on the foregoing, the Court finds that the second Mathews factor weighs slightly in favor of Petitioner. Again, the Court is cognizant that it should not overstate the strength of Petitioner's showing here. As noted above, Petitioner already had a bond hearing ten months ago before an IJ where the government bore the burden of establishing by clear and convincing evidence detention was warranted. Additionally, unlike § 1226(c) where no additional procedures are mandated, DHS regulations provide annual custody reviews and Petitioner may request a new custody review once every three months based on materially changed circumstances.

3. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's

[3] Under the regulations, an in-person hearing is permitted, but not required. *See* 8 C.F.R. § 241.4(h)(1).

order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, "the governmental issue at stake [here] is the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers").

Accordingly, the undersigned recommends finding the third Mathews factor weighs in favor of Petitioner.

4. Conclusion

Based on the foregoing, the Court finds that each of the Mathews factors weighs in favor of Petitioner. Accordingly, the Court finds that Petitioner is entitled to a second bond hearing.

\\\

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondent's motion to dismiss (ECF No. 12) be DENIED;
3. Respondents be directed to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and at which
    a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203; and
    b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the

\\\

\\\

\\\

right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 31, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE